# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Shelly Boldon,                                  Civil No. 14-2035 (DWF/HB)

          Plaintiff,

v.                                              **MEMORANDUM**
                                                **OPINION AND ORDER**

Messerli & Kramer, P.A., and
Central Prairie Financial, LLC,

          Defendants.

---

Thomas J. Lyons, Jr., Esq., Consumer Justice Center P.A., counsel for Plaintiff.

Bradley R. Armstrong, Esq., Derrick N. Weber, Esq., Messerli & Kramer, counsel for Defendants.

---

## INTRODUCTION

This matter is before the Court on Defendants Messerli & Kramer, P.A. ("Messerli") and Central Prairie Financial LLC's ("Central Prairie") (collectively "Defendants") Motion to Dismiss. (Doc. No. 43). For the reasons set forth below, the Court denies the motion.

## BACKGROUND

Plaintiff Shelly Bolden ("Boldon" or "Plaintiff") resides in Minnesota. (Doc. No. 40, Am. Compl. ¶ 4.) Plaintiff allegedly incurred financial obligations for which she owed money to Chase Bank, USA. (*Id.* ¶ 20.) Central Prairie, which engages in the purchase and collection of defaulted consumer debts in Minnesota, purchased Plaintiff's

debt from Chase Bank, USA.  (*Id.* ¶¶ 12, 21.)  Messerli is a law firm that collects

delinquent accounts and was retained by Central Prairie to collect Plaintiff's delinquent

accounts.  (*Id*. ¶ 6.)

On August, 23, 2010, Messerli, on behalf of Central Prairie, *served* two state court

complaints on Plaintiff related to the debt.  (*Id.* ¶ 20.)  On September 10, 2010, Boldon

filed an answer in both state court actions.  (*Id.* ¶ 23.)

On November 3, 2011, Boldon filed a complaint against Messerli in the

United States District Court for the District of Minnesota (Civ. No. 11-3246 (SRN/SER))

alleging violations of the Fair Debt Collection Practices Act ("FDCPA") and relating to

the above-mentioned debt allegedly owed to Central Prairie ("D. Minn. Suit").  (*Id.* ¶ 15.)

On February 14, 2012, the parties settled the D. Minn. Suit (the "Settlement

Agreement").  (*Id.* ¶ 17.)  The Settlement Agreement was signed by Messerli and Boldon

and provides:

> In consideration of the Agreement and other good and valuable
> consideration, the receipt and sufficiency of which is hereby
> acknowledged, Party Two [Messerli & Kramer, P.A.] releases and
> forever discharges Party One [Shelly Boldon], including all her past and
> present agents, heirs, executors, administrators, assigns, insurers, attorneys,
> and all other persons, firms, or corporations liable or who might be
> claimed to be liable, none of whom admit any liability to Party Two, but
> expressly deny any liability, from any and all claims, demands, damages,
> actions, causes of action, or suits of any kind or nature whatsoever . . .
> which it now has, ever had, or may hereinafter have against Party One
> arising out of or in consequence of or based upon any matter or thing
> whatsoever from the beginning of the time to the date of this agreement.

(*Id.* ¶ 19.)

On July 29, 2013, Central Prairie, as plaintiff, *filed* the 2010 complaint against Bolden in Dakota County state court in Minnesota and relating to debt Plaintiff allegedly owes to Central Prairie for account #6913 (Civ. No. 19HA-13-3311) ("Dakota 3311 Case"). (*Id.* ¶ 25.) On August 8, 2013, Central Prairie, as plaintiff, *filed* the second complaint against Bolden, which was also in Dakota County state court in Minnesota, and relating to debt Plaintiff allegedly owes to Central Prairie for account #2324 (Civ. No. 19HA-13-3466) ("Dakota 3466 Case"). (*Id.* ¶ 25.) A summary judgment hearing for the Dakota 3311 Case was held on October 8, 2013, and a summary judgment hearing for the Dakota 3466 Case was held on October 28, 2013. (Doc. No. 46 ("Armstrong Decl.") ¶¶ 5, 6, Exs. 2, 3.) Plaintiff appeared *pro se* at both hearings and asserted a number of defenses, but did not address the Settlement Agreement. (*Id.*) The court granted summary judgment in Central Prairie's favor in both matters. (Armstrong Decl. ¶¶ 7, 8, Exs. 4-5.)

Plaintiff commenced this action on June 20, 2014. (*See generally id.*) Plaintiff asserts the following four causes of action: (1) Violations of the FDCPA – 15 U.S.C. § 1692, *et seq.* (against both Defendants); (2) Violation of the Fair Credit Reporting Act ("FCRA") – 15 U.S.C. § 1681, *et seq.* (against Messerli); (3) Breach of Contract (against both Defendants); and (4) Violation of the Minnesota Garnishment Statute – Minn. Stat. § 571.71 (against both Defendants). (*Id.* ¶¶ 84-104.)

Boldon alleges that both of these Dakota County lawsuits (the Dakota 3311 Case and the Dakota 3466 Case) relate to the same accounts that were a part of and were released by the Settlement Agreement. (*Id.* ¶ 31.) Boldon further asserts that there is a

"significant connection" between Messerli and Central Prairie that is such that Messerli should be considered a party to the state court actions and Central Prairie should be considered a party to the Settlement Agreement. (*Id.* ¶¶ 32, 46.) In support of this assertion, Boldon alleges that Messerli and Central Prairie are located at the same address for their primary places of business. (*Id.* ¶¶ 33, 34.) Boldon asserts that the same person, Joseph Dressel, is both Central Prairie's registered agent and Messerli's Director of IT/Finance. (*Id.* ¶¶ 35, 36.) Similarly, Bolden asserts that Paul W. Anderson is both Central Prairie's manager and is an attorney with Messerli. (*Id.* ¶¶ 37, 38.) Bolden further alleges that Messerli itself argues that the two Defendants are in privity. (*See id.* ¶¶ 39-43.)

In support of her FDCPA claim, Bolden alleges that she notified Defendants' counsel, Jennifer Zwilling, that she was represented on August 21, 2013, and that Defendant acknowledged that information by e-mail dated September 5, 2013. (*Id.* ¶¶ 50, 51.) According to Bolden, Defendants then contacted her directly on August 28, 2013 and in violation of the FDCPA. (*Id.* ¶ 52.) Bolden also alleges that because her debts were listed in the Settlement Agreement, Messerli's accesses of her credit reports on January 9 and April 19, 2013, and on September 3, 2014, were illegal and resulted in higher interest rates for her. (*Id.* ¶¶ 58, 60.)

With respect to her claim for breach of contract, Bolden alleges that the terms of the Settlement Agreement released and discharged Plaintiff from any and all claims brought by Messerli and Central Prairie, including those claims in the Dakota County lawsuits. (*Id.* ¶¶ 61-62.)

Finally, with respect to her claims relating to Minnesota's garnishment statute, Bolden alleges that Defendants engaged in bank levies, garnished property, and communicated with Bolden's bank regarding garnishment. (*See id.* ¶¶ 70-82.)

Bolden alleges she has suffered "sleeplessness, nervousness, depression, feelings of hopelessness and pessimism, feelings of helplessness, and migraines" as a result of the above-actions. (*Id.* ¶¶ 56, 68, 82.)

Defendants now move to dismiss the Amended Complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (*See* Doc. Nos. 43, 45.)[1]

## DISCUSSION

## I.     Legal Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the

---

[1]     Plaintiff's original Complaint, filed on June 20, 2014, was solely against Messerli and asserted claims for violations of the FDCPA and for breach of contract. (*See* Doc. No. 1.) Messerli moved to dismiss the Complaint in September 2014 (*see* Doc. No. 7) and Magistrate Judge Bowbeer issued a Report and Recommendation on that motion in November 2014 (Doc. No. 21). This Court adopted that Report and Recommendation on March 17, 2015, which allowed Plaintiff leave to amend the Complaint. (Doc. No. 39.) Plaintiff did so and Defendants filed the instant motion to dismiss in response. (Doc. No. 43.)

complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id*. at 555. As the United States Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.[2]

## II.     Breach of Contract

Defendants seek dismissal of Plaintiff's breach of contract claim for failure to state a claim upon which relief can be granted.

Under Minnesota law, it is well established that settlement agreements are governed by principles of contract law. *See Ryan v. Ryan*, 193 N.W.2d 295, 297 (Minn.

---

[2]     Because the Court only considers extra pleading materials that are properly considered by the court on a motion to dismiss as either "embraced by the pleadings" or as "matters of public record, orders, items appearing in the record of the case," *Porous Media*, 186 F.3d at 1079, the Court need not convert the motion to one for summary judgment, Fed. R. Civ. P. 12(d).

1971).[3]  Further, the construction and interpretation of an unambiguous contract is a matter of law, and "[w]hen the language is clear and unambiguous, [courts] enforce the agreement of the parties as expressed in the language of the contract." *Dykes v. Sukup Mfg. Co.*, 781 N.W.2d 578, 582 (Minn. 2010) (citations omitted).  The Minnesota Supreme Court has "consistently stated that when a contractual provision is clear and unambiguous, courts should not rewrite, modify, or limit its effect by a strained construction." *Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 364-65 (Minn. 2009).  However, "if the language is ambiguous, parol evidence may be considered to determine intent." *Dykes*, 781 N.W.2d at 582 (citations omitted).  A contract is ambiguous if it is susceptible to more than one reasonable interpretation, not simply because the parties disagree as to its meaning. *See id.*; *see also Hartford Fire Ins. Co. v. Clark*, 562 F.3d 943, 946 (8th Cir. 2009).  "The determination of whether a contract is unambiguous depends on the meaning assigned to the words and phrases in accordance with the apparent purpose of the contract as a whole." *Halla Nursery, Inc. v. City of Chanhassen*, 781 N.W.2d 880, 884 (Minn. 2000).  Although the determination of whether a contract is ambiguous and interpretation of an unambiguous contract are questions of law that the Court may decide at the motion to dismiss stage, "the interpretation of an ambiguous contract is a question of fact for the jury." *Denelsbeck v. Wells Fargo & Co.*, 666 N.W.2d 339, 346 (Minn. 2003).

---

[3]     The parties do not dispute that the Settlement Agreement contains a choice of law provision identifying Minnesota law as the governing law in this case.

Defendant argues that the clear and unambiguous terms of the Settlement Agreement[4] expressly released only claims that Bolden and Messerli had against each other, and therefore Central Prairie's claims against Bolden are not implicated by the Settlement Agreement. Defendants assert that, as a result, Plaintiff fails to state a claim upon which relief can be granted. Defendants point to two paragraphs in the Settlement Agreement, which they state leave no room for doubt on this issue:

1. This Release is . . . entered into . . . by and between Shelly Boldon (Party One) and Messerli & Kramer P.A. (Party Two).

2. In consideration of the Agreement and other good and valuable consideration, the receipt of which is hereby acknowledged, Party Two [Messerli] releases and forever discharges Party One [Boldon] . . . from any and all claims, demands, damages, actions, causes of action, or suits of any kind or nature whatsoever, whether common law, equitable, statutory, based on contract or otherwise, which it now has, ever had, or may hereinafter have against Party One [Boldon] arising out of or in consequence of or based upon any matter or thing whatsoever from the beginning of time to the date of this agreement.

(Armstrong Decl. ¶ 4, Ex. 1.)

Plaintiff appears to counter that the nature of the relationship between Messerli and Central Prairie is unknown, requires discovery, but is alleged in a way that supports a sort of "privity" between Defendants. Thus, according to Plaintiffs, the Court cannot dismiss Plaintiff's breach of contract claim at this juncture because whether Messerli's

---

[4] Again, in considering a motion to dismiss, the Court may consider materials outside the pleadings that are necessarily embraced by the pleadings. *Porous Media*, 186 F.3d at 1079. Therefore, the Court properly considers the Settlement Agreement in this case as "embraced by the pleadings."

release includes Central Prairie is not known, although Plaintiff argues that she suspects that they are fully in privity. (*See* Am. Compl. ¶¶ 32-43.)

At this early phase in the proceedings, the Court agrees with Plaintiff. The Court cannot state, as a matter of law, that Central Prairie was not encompassed by the Settlement Agreement and that Plaintiff's debts were not discharged as a result of the Settlement Agreement. First, the Court finds that the language in the settlement agreement whereby Messerli releases Bolden is ambiguous. The provision releases Bolden from:

> [A]ny and all claims, demands, damages, actions, causes of action, or suits of any kind or nature whatsoever, whether common law, equitable, statutory, based on contract or otherwise, which it now has, ever had, or may hereinafter have against Party One arising out of or in consequence of or based upon any matter or thing whatsoever from the beginning of time to the date of this agreement.

(Armstrong Decl. ¶ 4, Ex. 1.) This could be read to conflict directly with the next sentence, which states that "[t]his Release is intended to resolve all claims . . . in the Lawsuit [defined as *Shelly Bolden v. Messerli & Kramer P.A.*, U.S. District Court for the District of Minnesota, Civil File No. 11-CV-3246 (SRN/SER)]" because it is unclear which claims were in fact released. (*Id.*) This creates ambiguity. Further, as Defendants would have it, if the Central Prairie debt was not released, the Settlement Agreement released Messerli from Plaintiff's claims against it, but in exchange gave Plaintiff nothing. This too points to the present ambiguity in the Settlement Agreement. The Settlement Agreement was entered into after the filing of the Dakota County suit and

involved the debt underlying the Dakota County suits. As alleged, this debt could have been implicated by the Settlement Agreement.

Second, here, Plaintiff alleges that Defendants' business locations, operations, and key stakeholders overlap in such a way that demonstrates that they should be treated as related entities. (*See* Am. Compl. ¶¶ 32-43.) Plaintiff further points to public records in support of her view that the parties have a legal relationship. (*See* Doc. No. 49 at 13.) As a result, taking all of the facts pleaded in the complaint as true, as the Court must do, Plaintiff has sufficiently alleged that Central Prairie and Messerli are related and that the Settlement Agreement could have implicated both parties. This means that "the contractual language is—at best—ambiguous, and its interpretation cannot be resolved on a motion to dismiss." *See, e.g.*, *In re RFC & ResCap Liquidating Trust Litig.*, Civ. No. 13-CV-3451, 2015 WL 4255703, at *3 (D. Minn. July 14, 2015) (citing *Olympus Ins. Co. v. AON Benfield, Inc.*, 711 F.3d 894, 898 (8th Cir. 2013) ("If the court determines that a contract is ambiguous, its interpretation then becomes a question of fact for the jury and the district court should not grant a motion to dismiss.")). Accordingly, the Court finds that, at this stage of the proceedings, Bolden has sufficiently alleged that the Settlement Agreement with Messerli included Central Prairie and the debts it was seeking from Bolden.

### III.    *Res Judicata*

Defendants further seek dismissal of Plaintiff's breach of contract claim on *res judicata* grounds. Defendants argue that if the Court determines that Central Prairie and Messerli are in "privity," then the state court litigation between Plaintiff and

Central Prairie operates as a *res judicata* bar to Plaintiff's current claims against both

Messerli and Central Prairie because the issues before this Court have already been

litigated.

Specifically, Defendants assert that the Judgments entered by the Dakota County

court against Bolden, in both the Dakota 3311 Case and the Dakota 3466 Case,

determined that Bolden was liable to Central Prairie for the disputed debts and, as a

result, she cannot now litigate that liability. Defendants argue that each of the elements

of *res judicata* have been met here[5]—that is, the operative facts in the state court

litigation involved Plaintiff's liability for the debt that was at issue in the state court

litigation and in this case; a final judgment was entered on the merits in the state court

litigation; Central Prairie and Messerli were in "privity" for purposes of the state court

litigation such that Messerli's interests were represented in the prior action; and Plaintiff

---

5       "The law of the forum that rendered the first judgment controls . . .
*res judicata* analysis." *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th
Cir. 2012) (internal quotation marks omitted).  In Minnesota, a "judgment on the merits
constitutes an absolute bar to a second suit for the same cause of action, and is
conclusive between parties and privates, not only as to every matter which was
actually litigated, but also as to every matter which might have been litigated, therein."
*Beutz v. A.O. Smith Harvestore Products, Inc.*, 431 N.W.2d 528, 531 (Minn. 1988)
(internal quotations and citations omitted.
        For collateral estoppel, "a miniature of *res judicata*," to apply, each of the
following elements must be met:  (1) the new issue must be identical to one adjudicated
in a prior case; (2) there must have been a final judgment on the merits in the prior case;
(3) the estopped party must have been a party, or in privity with a party, to the prior
case; and (4) the estopped party must have been given a full and fair opportunity to be
heard on the adjudicated issue. *See, e.g.*, *Hauschildt v. Beckingham*, 686 N.W.2d 829,
837 (Minn. 2004) (internal quotation marks and citations omitted).

had a full and fair opportunity to litigate the issue during the Dakota County proceedings. (*See* Doc. No. 45 at 13-15.)

As outlined above, the Court concludes that, at this stage in the proceedings, it cannot conclude as a matter of law that the elements of res judicata have been met so as to require dismissal. Taking Plaintiff's allegations as true, questions exist at least with respect to whether the third and fourth elements—"(3) the estopped party must have been a party, or in privity with a party, to the prior case; and (4) the estopped party must have been given a full and fair opportunity to be heard on the adjudicated issue"—have been met. *See Hauschildt*, 686 N.W.2d at 837. The nature and extent of the relationship between Messerli and Central Prairie requires further development, as does the nature of the parties' understanding relating to the Settlement Agreement and the different lawsuits with respect to whether there was sufficient privity. Further, to the extent Plaintiff was *pro se* in the Dakota County summary judgment proceedings and to the extent that the relationship of each of the parties is unclear, whether Plaintiff had a full and fair opportunity to litigate has not been established. In sum, dismissal based on principles of res judicata is not appropriate at this juncture.

## IV.    FDCPA

### A.    Section 1692c(a)(2)

Defendants seek dismissal of Plaintiff's Section 1692c(a)(2) claim for failure to state a claim upon which relief can be granted.

The FDCPA seeks "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). To determine whether there are violations of § 1692,

Courts examine a debt collector's conduct "through the eyes of the unsophisticated consumer." *See Freyermuth v. Credit Bureau Servs., Inc.*, 248 F.3d 767, 771 (8th Cir. 2001) (quoting *Duffy v. Landberg*, 215 F.3d 871, 873 (8th Cir. 2000)). The "unsophisticated consumer" test is "designed to protect consumers of below average sophistication or intelligence, but [it] also contain[s] an objective element of reasonableness that prevents liability for bizarre or idiosyncratic interpretations of collection notices." *Peters v. Gen. Serv. Bureau, Inc.*, 277 F.3d 1051, 1055 (8th Cir. 2002) (quotations and citations omitted). Section 1692c(a)(2) provides that:

> [I]f the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer . . . .

15 U.S.C. § 1692c(a)(2).

Based on this provision, Plaintiff alleges that on August 21, 2013, her attorney informed Messerli of his representation. (*See* Am. Compl. ¶¶ 50-55.) Plaintiff further alleges that on August 28, 2013, Messerli contacted her directly in violation of Section 1692c(a)(2) of the FDCPA. (*See id.*)

Defendants argue that they were not notified that Plaintiff was represented until September 5, 2013 and that, therefore, the August 28, 2013 contact was not in violation of the FDCPA. In support of its argument, Defendants attach a September 5, 2013 e-mail from Messerli attorney Jennifer Zwilling to Plaintiff's attorney, Mark Vavreck, in which she writes: "You requested that you be updated as attorney of record in the state court

matters and wanted to explore possible settlement of the state court matters." (Armstrong Decl. ¶ 9, Ex. 6.) According to Defendants, this e-mail shows that Defendants were not notified that Plaintiff was represented until the date of this e-mail. (*See* Doc. No. 45 at 16-17.)

Consistent with its ruling from the bench on this issue, the Court disagrees with Defendants, and concludes that at this stage in the proceedings, Plaintiff has stated a plausible claim for a violation of Section 1692c(a)(2). Plaintiff has alleged that she informed Defendants she was represented and that they contacted her directly despite knowing this. (*See* Am. Compl. ¶¶ 50-55.) This states a claim under this provision. Even if the e-mail was properly considered by the Court, which it is not because it is not "embraced by the pleadings," Defendants' e-mail does not unambiguously contradict Plaintiff's allegations, and the Court must take Plaintiff's allegations as true for purposes of a motion to dismiss. Thus, Plaintiff's motion to dismiss this claim is denied.

### B.    Sections 1692d, 1692e, 1692e(5), and 1692f

Defendants also assert that Plaintiff's claims for violations of 15 U.S.C. §§ 1692d, 1692e, 1692e(5), and 1692f should be dismissed for the same reason as Plaintiff's breach of contract claim—that Central Prairie's claims were not released by the Settlement Agreement. For the reasons articulated above (*see* Section II), the Court cannot conclude as a matter of law that Central Prairie's claims were or were not released by the Settlement Agreement and therefore the Court does conclude that Plaintiff's claims are not appropriate for dismissal at this stage.

Defendants further argue that Plaintiff's claims under Sections 1692d, 1692e, 1692e(5), and 1692f are time-barred. According to Defendants, because all actions under those sections must be filed "within one year from the date on which the violation occurs," 15 U.S.C. § 1692k(d), and because that statute is jurisdictional, the claims must be dismissed. (*See* Doc. No. 45 at 17-19.) Specifically, Defendants assert that Plaintiff was on notice of Central Prairie's ongoing claims against her as early as 2012 and that therefore the filing of the Dakota County actions on July 29, 2013, was not the moment of accrual for Plaintiff's FDCPA claims. Further, according to Defendants, any communications about the alleged debt were merely new communications concerning old claims and therefore do not start a new statute of limitations period. (*See* Doc. No. 45 at 18 (citing *Nutter v. Messerli & Kramer, P.A.*, 500 F. Supp. 2d 1219 (D. Minn. 2007) (citation omitted)).) Finally, Defendants argue that, at least with respect to Central Prairie, the Amended Complaint cannot relate back and therefore claims against Central Prairie must be dismissed as untimely. (Doc. No. 45 at 19-20.)

The Court disagrees. As is true with Plaintiff's other claims, the Court concludes that, at this phase in the proceedings, it cannot determine as a matter of law that the statute of limitations bars Plaintiff's FDCPA claims. In her Amended Complaint, Plaintiff alleges that the summonses were filed in August 2013. Plaintiff initiated this action on June 20, 2014. This is less than one year as required by the statute of limitations. Nothing referenced by Defendants definitively undermines this view at this phase. Thus, Plaintiff's allegations adequately support Plaintiff's contention that the

statute of limitations did not accrue prior to August 2013.  Thus, her claims are not barred by the statute of limitations.

Finally, the question of relation-back also cannot be determined as a matter of law because the relationship between the two parties needs further development and Plaintiff filed her Complaint *pro se*.  The record relating to whether Plaintiff intended to include Central Prairie, but indeed had "confusion" or made a "mistake" about the proper parties to be sued will also need to be developed.  *See Photolab Corp. v. Simplex Specialty, Co.*, 806 F.2d 807, 811 (8th Cir. 1986).  Accordingly, Plaintiff's allegations regarding her FDCPA claims are sufficient to meet her burden under Rule 12(b)(6) and those claims cannot be dismissed based on the statute of limitations at this time.

## V.    FCRA

Defendants seek dismissal of Plaintiff's claim for a violation of 15 U.S.C. § 1681b(f) of the Fair Credit Reporting Act ("FCRA").

Under, Section 1681b(f), a third party must possess a "permissible purpose" for obtaining someone's credit history from a consumer reporting agency.  *See* 15 U.S.C. § 1681b(f).  A third party possesses a permissible purpose for obtaining such information where it "intends to use the information in connection with . . . collection of an account of . . . the consumer."  § 1681b(a)(3)(A).

Defendants contend that Central Prairie was a judgment creditor of Plaintiff, and that, as a result, Messerli, Central Prairie's attorneys, had a permissible purpose for accessing Plaintiff's credit history.  Thus, Defendants assert that Plaintiff cannot state a FCRA claim.

For the reasons outlined above with respect to the relationships between the parties and based upon Plaintiff's allegations regarding the Settlement Agreement, which must be assumed to be true, the Court concludes that Plaintiff has adequately stated a claim under the FCRA. Plaintiff alleges that in light of the February 2012 Settlement Agreement, Plaintiff's debts were resolved and that therefore Messerli lacked a permissible purpose for obtaining and using Plaintiff's credit report when it accessed that report on January 9, 2013, April 19, 2013, October 9, 2013, and September 3, 2013. (Am. Compl. ¶¶ 57-60.) Accordingly, Defendants' motion to dismiss this claim is denied.

## VI.    Garnishment

Defendants seek dismissal of Plaintiff's garnishment claim brought under Minn. Stat. § 571.71, *et seq.* Section 571.71 sets out the garnishment procedures in Minnesota.

Plaintiff alleges that Defendants wrongfully garnished money that was not collectable and in violation of Minnesota law. Defendants assert that because the statute includes language that "a creditor may issue a garnishment summons . . . at any time after the entry of a money judgment in the civil action," and here the garnishment summonses were sent after the entry of the money judgments in state court, the claim warrants dismissal. *See* Minn. Stat. § 571.71.

As with Plaintiff's other claims, the Court concludes that Plaintiff has adequately alleged that her money was wrongfully garnished such that she can overcome a motion to dismiss at this early stage. Plaintiff alleges that the debts were not collectible, but that Defendants repeatedly contacted her and ultimately garnished funds. This states a claim.

This is particularly true in light of the Court's analysis above regarding the ambiguity of the Settlement Agreement, which is in dispute. Defendants' motion to dismiss this count is also denied.

## VII. *Rooker-Feldman* Doctrine

Defendants seek dismissal of Plaintiff's FCRA, garnishment, breach of contract, and non-1692c FDCPA claims based on the so-called *Rooker-Feldman* doctrine. Under *Rooker-Feldman*, federal courts lack subject-matter jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

Defendants argue that with respect to the FCRA and garnishment claims, Plaintiff's contention that the state court judgments are not valid is central to those claims and thus they challenge the validity of state court judgments in contravention of the *Rooker-Feldman* doctrine. Defendants further argue that the breach of contract and relevant FDCPA claims similarly rely on the contention that Central Prairie obtained judgments in state court against Plaintiff for obligations that were previously released, which also makes those claims improper under *Rooker-Feldman*.

The Court disagrees. In *Ness v. Gurstel Chargo, P.A.*, 933 F. Supp. 2d 1156, 1163 (D. Minn. 2013), the court addressed whether certain claims before it were barred by *Rooker-Feldman*. In that case, the defendants received a judgment in state court against Plaintiff regarding the collection of certain consumer debt. *Id.* at 1160-61. Plaintiff then

filed a class action in federal district court asserting FDCPA, fraud, and negligent misrepresentation, unjust enrichment, and other claims against the defendants. *Id.* The plaintiff sought injunctive and declaratory relief, as well as damages, and specifically sought vacation of the state court default judgments and a declaration that they were void *ab initio*. *Id.*

The court held that the plaintiff's allegations "that Defendants violated the FDCPA by procuring default judgments against Plaintiffs 'without proof of ownership of the debt,' without 'a legal right to collect the debt,' and with deceptive pleadings . . . appear to attack Defendants' debt-collection practices rather than the state-court judgments" and that therefore, "*Rooker-Feldman* did not bar the[] FDCPA claims." *Id.* at 1163. The court further held, however, that for the "two claims in which Plaintiffs complain of injuries caused by the state-court judgments themselves and seek indirect reversal of those judgments; those claims are barred by *Rooker–Feldman*." *Id.* Specifically, the court stated that the plaintiffs' fraud and negligent misrepresentation claims, in which "Plaintiffs allege that as a result of Defendants' 'deceptive representations and omissions,' they 'were harmed through the entry of *void ab initio* default judgments and collection activities predicated on those judgments,'" and for which plaintiff asked the court to "take all remedial steps to vacate the default judgments against the class, as the default judgments are *void ab initio*" were barred by *Rooker-Feldman* because "Plaintiffs' complained-of injuries are the state-court default judgments." *Id.* Finally, the court also held that the same was true of the plaintiffs' unjust enrichment claims for which, "Plaintiffs assert that Defendants have been unjustly

enriched because Defendants have collected Plaintiffs' debts pursuant to the state-court default judgments. The state-court default judgments are the source of Plaintiffs' injuries, and Plaintiffs are again seeking an indirect reversal of the state-court judgments by asking for the return of money paid to Defendants pursuant to these judgments." *Id.* at 1163-64.

Here, the Court finds that Plaintiff's FDCPA and garnishment claims as currently alleged "appear to attack Defendants' debt-collection practices rather than the state-court judgments" like in *Gurstel*, and are therefore not barred by *Rooker-Feldman*. Also, the Court finds that Plaintiff's breach of contract claim appears to be for injuries caused by Defendants' alleged breach of contract, not by the entry of the state court judgments and is therefore also not barred by *Rooker-Feldman*. Further, the existing lack of clarity surrounding the relationships between Defendants makes it difficult for the Court to decide at this juncture, as a matter of law, that Plaintiff's claims necessarily implicate the state court judgements; thus, the Court declines to dismiss the claims at this stage on this ground as well. Accordingly, Defendants' motion to dismiss on *Rooker-Feldman* grounds is denied.

## CONCLUSION

Plaintiff has adequately stated her claims at this early stage in the proceedings and, as a result, overcomes Defendants' motion to dismiss.

**ORDER**

Accordingly, based on the foregoing, and on the files, records, and proceedings, herein, and the Court being otherwise duly advised in the premises, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Doc. No. [43]) is **DENIED**.


Dated:  August 26, 2015          s/Donovan W. Frank
                                 DONOVAN W. FRANK
                                 United States District Judge